Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave., Suite 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Email: mark@javitchlawoffice.com

Attorney for Plaintiff
BRANDON CALLIER and the proposed Class

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

BRANDON CALLIER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CORDOBA LEGAL GROUP PLLC (also sued as CORDOBA LEGAL GROUP, LLC); ALFREDO CORDOBA; and DOES 1-10,

Defendants.

CIVIL NO. 3:26-cv-01316-LS

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1. Civil Liability for Prohibited Barratry, Tex. Gov't Code § 82.0651(c), (d)
2. Unlawful Unregistered Telephone Solicitation, Tex. Bus. & Com. Code §§ 302.101, 302.302, 302.303

**JURY TRIAL DEMANDED**

Plaintiff BRANDON CALLIER ("Plaintiff" or "Mr. Callier"), individually and on behalf of all others similarly situated, brings this class action against Defendants CORDOBA LEGAL GROUP PLLC, ALFREDO CORDOBA, and DOES 1-10 (collectively, "Defendants"), and for his First Amended Class Action Complaint alleges as follows:

## INTRODUCTION

1. This is a class action arising from Defendants' unlawful telephonic solicitation of legal employment in violation of the Texas barratry statute. Defendant Cordoba Legal Group PLLC ("Cordoba") is a Florida law firm that, by itself and through telemarketers it pays and

finances — including operations that identify themselves by trade names such as "Clear Finance Today," "Green Finance," and others — has caused unsolicited prerecorded and live telephone calls to be made to thousands of Texas residents, soliciting them to retain Cordoba for debt-relief legal services in exchange for tens of thousands of dollars in attorney's fees.

2. Texas law strictly prohibits this conduct. Tex. Penal Code § 38.12(a)(2) makes it a criminal offense if, with intent to obtain an economic benefit, a person "solicits employment, either in person or by telephone, for himself or for another." Tex. Penal Code § 38.12(b) independently makes it a criminal offense to knowingly finance such solicitation, or to invest funds the financier knows or believes are intended to further such solicitation. Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct further prohibits a lawyer from engaging in regulated telephone, social media, or other electronic contact involving live or electronically interactive communication — whether initiated by the lawyer or by someone acting on the lawyer's behalf — to seek professional employment from prospective clients with whom the lawyer has no qualifying family, current or former attorney-client, or close personal relationship. Tex. Gov't Code § 82.0651(c) creates a private right of action for any person who is solicited in violation of any of those provisions, but who does not enter into a contract for legal services as a result, and § 82.0651(d) requires a prevailing plaintiff to recover, from each person who engaged in barratry, a $50,000 statutory penalty, actual damages, and reasonable and necessary attorney's fees.

3. Plaintiff is one such person. Defendants transmitted two identical unsolicited prerecorded voicemails to Plaintiff's cellular telephone — on March 16, 2026 and again on April 21, 2026 — each representing the call to be from "Green Finance," each offering a "$25,000 relief fund," and each directing Plaintiff to call the same toll-free number. Neither voicemail disclosed that a law firm was soliciting his legal business. When Plaintiff returned the call on April 27, 2026,

he was kept on the telephone across two calls totaling nearly an hour, during which the representatives obtained his Social Security number, caused a "soft" pull of his consumer credit report, interrogated him about his specific debts and creditors, and only then disclosed — for the first time — that "the company that has your approval is Cordoba Legal." The representative repeatedly referred to the retainer she was preparing as Plaintiff's "legal draft," told Plaintiff that "Cordoba Legal[] will be reaching out to your creditors to negotiate," and told him he "ha[d] to stop making payments to [his] creditor because Cordoba Legal will be helping [him] with the payments." While Plaintiff was still on the telephone, and without Plaintiff ever requesting it, Defendants transmitted to him a fully assembled, firm-executed Cordoba retainer agreement for electronic signature. Plaintiff did not sign it.

4. Plaintiff brings this action on behalf of himself and a class of similarly situated persons who were solicited by telephone, while physically present in Texas, for legal employment with Cordoba in the manner described above and who did not enter into a contract with Cordoba as a result.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, because the proposed class consists of more than 100 persons — indeed, on information and belief, more than one thousand persons — and Tex. Gov't Code § 82.0651(d), as amended by H.B. 4325 (89th Leg., R.S.), provides that a prevailing plaintiff "shall recover from each person who engaged in barratry" a $50,000 statutory penalty, plus actual damages and reasonable and necessary attorney's fees, for actions filed on or after September 1, 2025. Minimal

diversity exists because Plaintiff is a citizen of Texas and Defendant Cordoba is, on information and belief, a citizen of Florida and other states.

6. In the alternative, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). The amount in controversy as to Plaintiff individually exceeds $75,000, exclusive of interest and costs, including the statutory penalties available under Tex. Gov't Code § 82.0651(d) for multiple solicitations, actual damages, and reasonable and necessary attorney's fees. The parties are completely diverse: Plaintiff is a citizen of Texas, and Defendant Cordoba is, on information and belief, a citizen of Florida and other states, with no member of Cordoba sharing Texas citizenship with Plaintiff. The fictitious Doe Defendants are disregarded for purposes of determining diversity at the pleading stage.

7. This Court has personal jurisdiction over Defendants because Defendants directed unlawful telephonic solicitation activity into the State of Texas and into the El Paso Division of this District, and the claims at issue arise out of and relate to that conduct. Defendants placed prerecorded telephone calls into Texas, placed a live telephone call into Texas, and transmitted to Plaintiff in El Paso, Texas a written retainer agreement and accompanying account documents directed to Plaintiff at his Texas residence and Texas bank account. Defendant Cordoba further purposefully availed itself of the privilege of conducting activities in Texas by employing as its designated "Local Counsel" a Texas-licensed attorney to represent Texas-resident clients of Cordoba. Defendants are accordingly subject to specific personal jurisdiction in this District.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim occurred in this District, including Plaintiff's receipt of both prerecorded voicemails, his return call, Defendants' return call to him, and his receipt of the retainer agreement, all while Plaintiff was physically present at his residence in El

Paso, Texas. Venue is proper in the El Paso Division pursuant to Local Rule CV-3 and 28 U.S.C. § 124(d)(3).

## PARTIES

9. Plaintiff Brandon Callier is a natural person who resides in El Paso, Texas. Plaintiff is the sole subscriber, regular user, and customary carrier of cellular telephone number (915) 433-1845 (the "Subject Number"), which Plaintiff uses for personal, residential purposes. The Subject Number is the number to which Defendants placed the prerecorded voicemails and other calls described below. Plaintiff's Subject Number has been registered on the National Do-Not-Call Registry continuously since June 28, 2024.

10. Plaintiff is also the sole subscriber and regular user of a second cellular telephone number ending in 0794. Plaintiff used the 0794 number, rather than the Subject Number, to place his return call to Defendants' toll-free callback number, as described below.

11. Defendant Cordoba Legal Group PLLC ("Cordoba") is a Florida professional limited liability company with its principal place of business at 102 NE 2nd Street #252, Boca Raton, Florida 33432. The retainer agreement transmitted to Plaintiff identifies the contracting firm as "Cordoba Legal Group, LLC."; counsel appearing in this action have identified the entity as "Cordoba Legal Group PLLC." Cordoba is a law firm engaged in the business of soliciting and providing debt-relief legal services to consumers nationwide, including consumers residing in Texas. Cordoba's sole or principal attorney is identified in its retainer agreement as Alfredo Cordoba, Esq.

12. Defendant Alfredo Cordoba is an individual and an attorney who, on information and belief, resides in or maintains his professional practice in Florida. Alfredo Cordoba is the sole or principal attorney and principal of Defendant Cordoba Legal Group PLLC. He is identified by

name as the engaging attorney in the retainer agreement Defendants transmitted to Plaintiff, and the firm-side signature block of that agreement bears his name. On information and belief, Alfredo Cordoba directs and controls the solicitation practices described in this Complaint, personally established and directs the financing arrangements with the telemarketing operations and credit-pull vendor described below, and knowingly finances and benefits from those solicitations. He is sued in his individual capacity as a person who committed barratry within the meaning of Tex. Gov't Code § 82.0651.

13. Defendants Does 1 through 10 are persons or entities whose true names and capacities are presently unknown to Plaintiff and who are responsible in some manner for the unlawful conduct alleged herein, including by placing, transmitting, initiating, or causing to be placed, transmitted, or initiated the unlawful telephonic solicitations described below, or by directing, ratifying, financing, or knowingly benefitting from such conduct. Doe Defendants include, without limitation: (i) the marketing operation that identified itself to Plaintiff by the trade name "Clear Finance Today"; (ii) the entity or entities that transmitted the prerecorded voicemails using the trade name "Green Finance"; (iii) DRM Solutions, LLC, a Boca Raton, Florida company that, as alleged below, obtained a "soft" pull of Plaintiff's consumer credit report in connection with the solicitation; (iv) the operation using the internet domain "theenrollment.com" through which Cordoba solicits and enrolls other Texas consumers; and (v) the individuals who identified themselves to Plaintiff as "Ervin" and "Aura." The exact legal forms and identities of those persons and entities are presently unknown to Plaintiff but are known to Defendant Cordoba. Plaintiff will amend this Complaint to allege the true names and capacities of Doe Defendants when ascertained.

## FACTUAL ALLEGATIONS

### A. Cordoba's Telephonic Legal-Marketing Funnel

14. Cordoba operates a high-volume legal-marketing funnel designed to identify, qualify, and contract with consumers carrying significant unsecured consumer debt. The end product of the funnel is an executed retainer agreement under which Cordoba collects tens of thousands of dollars in attorney's fees over a multi-year period.

15. Cordoba's standard form retainer agreement, as transmitted to Plaintiff, requires the client to make sixty monthly payments of $1,098.93, commencing in the present case on May 7, 2026. The Retainer Agreement allocates the client's payments, on its face, between (i) attorney's fees to Cordoba in the recited amount of $20,556.00, (ii) deposits to a settlement-payment fund in the recited amount of $41,112.00, and (iii) charges of $60.00 per month for "additional services" stated to be included in the monthly payment. The Retainer Agreement is for the practice of law: it engages Cordoba to "negotiate Client's debts," to "provide Client with legal counsel," and to "represent and defend Client in court in any lawsuits, arbitrations or other proceedings filed against Client by any and all creditors."

16. To populate this funnel, Cordoba pays and finances third-party telemarketers to place telephone solicitations on its behalf. The telemarketing operation follows a standardized, scripted sequence:

(a) A prerecorded voicemail is transmitted to the consumer's telephone using a spoofed or rotating caller-identification number. The message identifies the caller by a misleading trade name — "Green Finance" — and offers a purported "$25,000 relief fund." It does not disclose that a law firm is soliciting the consumer's legal business.

(b) Consumers who call the toll-free callback number are routed to a live representative who, within the first two minutes and before providing any substantive information, requests the consumer's name, date of birth, email address, home address, and Social Security number.

(c) The representative then obtains a "soft" pull of the consumer's consumer credit report and, armed with the resulting information, questions the consumer about the consumer's specific debts, creditors, income, and monthly bills.

(d) The consumer is transferred to a second representative, who frames the transaction in the vocabulary of consumer lending — "underwriting department," "review," "approval," "results" — and then discloses for the first time that the entity providing the "approval" is Cordoba Legal Group, which the representative markets to the consumer by reference to its Better Business Bureau and Trustpilot ratings.

(e) The representative advises the consumer that Cordoba will contact and negotiate with the consumer's creditors, instructs the consumer to stop making payments to the consumer's creditors, and repeatedly refers to the retainer agreement being prepared as the consumer's "legal draft."

(f) The representative requests the consumer's checking account information and, while the consumer is still on the telephone, transmits a fully assembled, firm-executed Cordoba retainer agreement for electronic signature.

17. Cordoba conducts this funnel through more than one front operation and internet domain. The solicitation of Plaintiff was routed through the trade name "Clear Finance Today" and the email domain "clearfinancetoday.com." On information and belief, Cordoba solicits and

enrolls other Texas consumers through the separate internet domain "theenrollment.com," using agents with Florida-area-code telephone numbers. The use of multiple, unrelated-appearing trade names and domains to funnel consumers to a single law firm is a designed feature of the operation and further conceals Cordoba's role.

18. Neither Cordoba nor any telemarketer acting for it holds a registration certificate issued by the Office of the Secretary of State of Texas authorizing telephone solicitation of Texas consumers.

## B. The Two Prerecorded Voicemails

19. Defendants transmitted to Plaintiff's Subject Number, (915) 433-1845, two unsolicited prerecorded voicemails containing the identical prerecorded message:

(a) On March 16, 2026, at approximately 3:31 p.m., from caller identification number (442) 219-5393; and

(b) On April 21, 2026, at approximately 11:55 a.m., from caller identification number (641) 300-0479.

20. Plaintiff was at his residence in El Paso, Texas when each voicemail was transmitted. Plaintiff was working on tax returns during tax season when the calls arrived and interrupted him. Plaintiff did not answer either call.

21. Each voicemail was a prerecorded message. Each message itself announced that it was "automated." The caller did not pause for two-way conversation, asked no questions to which a response was expected, and the cadence, pacing, and intonation of the speaker's voice were uniform and characteristic of a prerecorded audio file rather than a live human speaker. The two messages were word-for-word identical, of identical length — twenty-eight seconds each — confirming that both were transmissions of the same recorded audio file.

22. Each voicemail stated, in substance: "Hi, this is an automated reminder from Green Finance. We tried reaching you about your $25,000 relief fund with payments starting around $250 a month. You can use it for personal expenses, debt consolidation, or emergencies. There's no credit check, and same day approval is available if you owe over $10,000. Please call 877-509-1570. Again, that's 877-509-1570."

23. Although the two voicemails were transmitted from different caller-identification numbers — (442) 219-5393 and (641) 300-0479 — each directed the recipient to call the same toll-free number, 877-509-1570. The use of differing caller-identification numbers to deliver an identical recorded message directing recipients to a single callback number reflects the deliberate use of spoofed or rotating caller identification to conceal the identity of the calling party and to evade call-blocking and consumer-complaint mechanisms.

24. Neither voicemail disclosed that the calling party was soliciting on behalf of a law firm, disclosed Cordoba's name, or disclosed that the "relief fund" it described was in fact a long-term legal-services retainer requiring sixty monthly payments. The concealment of the solicitor's identity and purpose was deliberate and is a designed feature of the funnel described above.

25. Plaintiff had no family, attorney-client, or pre-existing professional relationship with Cordoba, Alfredo Cordoba, the operation identifying itself as "Clear Finance Today," the operation identifying itself as "Green Finance," "Ervin," "Aura," or any Doe Defendant that solicited him. Plaintiff did not request, invite, or consent to either voicemail or to any subsequent communication from them.

26. Plaintiff's Subject Number had been registered on the National Do-Not-Call Registry continuously since June 28, 2024 — nearly two years before the first voicemail was transmitted.

## C. The April 27, 2026 Return Call and the Credit Pull

27. On April 27, 2026, at approximately 9:46 a.m., Plaintiff returned the call to 877-509-1570 — the same toll-free number to which both prerecorded voicemails had directed him. Plaintiff placed that call from his 0794 number. Plaintiff remained on that telephone call for approximately thirty-six minutes, until it disconnected at approximately 10:21 a.m. due to a poor connection.

28. Plaintiff was initially connected to a representative who identified himself as "Ervin."

29. At the outset of the call, before "Ervin" knew Plaintiff's identity, "Ervin" told Plaintiff that he could "go ahead and get [him] fully approved" and that Plaintiff was "already pre-approved." Approximately forty-seven seconds into the call, "Ervin" said: "I can get you fully approved, sir, if you have five minutes. We'll go over some numbers obviously, and let you know if that would be something that we could work with." Only after making that representation did "Ervin" ask Plaintiff, without any prompting from Plaintiff, to supply his total debt, name, date of birth, email address, and home address. Plaintiff supplied that information in response to those requests. Plaintiff did not volunteer his email address, did not supply it for the purpose of receiving any document, and did not ask that anything be sent to him. The only thing Plaintiff ever affirmatively requested from any representative was a callback number.

30. After collecting that information, "Ervin" told Plaintiff: "The last thing I would need from you, sir, for me to be able to like pull up all your debt and stuff like that, I do need to conduct a soft credit pull. It's not a credit check. It's not gonna affect your credit whatsoever for me to be able to do that. I do need a Social Security number." Plaintiff responded "Ok," and "Ervin" said, "And whenever you're ready." Plaintiff provided his Social Security number, and "Ervin" immediately obtained a "soft" pull of Plaintiff's consumer credit report. Approximately

four minutes into the call, "Ervin" stated that he was "going to go ahead and pull up the number here to be able to go ahead and see what we have to work with," and shortly afterward stated that he would "go down the line on each one of the debts here" and have Plaintiff confirm each one. "Ervin" then read to Plaintiff the names of Plaintiff's creditors and the balance owed to each — information "Ervin" could only have obtained from Plaintiff's credit report.

31. Plaintiff's TransUnion consumer credit report confirms that a "soft" inquiry was made on his credit file on April 27, 2026 — the day of the call — by "DRM Solutions, LLC via CIC." DRM Solutions, LLC lists an address of 5355 Town Center Road, Suite 940, Boca Raton, Florida 33486 — the same city in which Defendant Cordoba maintains its principal place of business. Plaintiff's TransUnion report reflects those inquiries in the "Account Review Inquiries" section rather than as inquiries resulting from any credit application by Plaintiff. Plaintiff has never had any account, application, or business relationship with DRM Solutions, LLC, and had never heard of DRM Solutions, LLC before this action. On information and belief, DRM Solutions, LLC performed the "soft" credit pull "Ervin" described, on behalf of and for the benefit of Cordoba's solicitation of Plaintiff.

32. The April 27, 2026 credit pull was not the first time DRM Solutions, LLC pulled Plaintiff's credit file in connection with a Cordoba solicitation. Plaintiff's TransUnion report reflects an earlier "soft" pull by DRM Solutions, LLC on October 23, 2025. That pull coincides with a prior Cordoba solicitation of Plaintiff: on October 23, 2025, Plaintiff received an email captioned "Cordoba Plan" from an agent identifying himself as Luis Galvan, using the email domain "partner1corp.com," presenting a side-by-side comparison of Plaintiff's "CURRENT PLAN" against a "CORDOBA PLAN" for the resolution of Plaintiff's enumerated consumer debts. The recurrence of the same DRM Solutions credit pull in connection with a separate

Cordoba solicitation, months apart and routed through a different front operation, further evidences an established, funded, and ongoing arrangement among Cordoba, its telemarketing fronts, and DRM Solutions, LLC.

### D. The Disclosure of Cordoba and the Second Call

33. Approximately nineteen minutes into the first call, Plaintiff was transferred to a second representative, who identified herself as "Aura."

34. Approximately thirty minutes into the call, "Aura" told Plaintiff: "I'm just submitting the information to my underwriting department for a quick review …. Give me two minutes. I'll be back with your results."

35. Approximately thirty-three minutes and fifty-one seconds into the call, "Aura" returned and told Plaintiff: "I have your approval information ready. The company that has your approval is Cordoba Legal." That was the first time in the entire solicitation sequence — across two prerecorded voicemails and thirty-three minutes of live conversation — that Cordoba was identified to Plaintiff by name.

36. Approximately thirty-four minutes into the call, "Aura" told Plaintiff: "Cordoba Legal is a firm which is rated A plus by the Better Business Bureau with five-star plus ratings from Trust Pilot."

37. At no point before or during the calls did Plaintiff ask for legal help, legal advice, or legal representation of any kind. The first call disconnected at approximately 10:21 a.m. due to a poor connection. Plaintiff did not ask "Aura" to call him back, and the connection was not restored by any act of Plaintiff.

38. Approximately two minutes after the first call disconnected, at approximately 10:23 a.m. on April 27, 2026, "Aura" placed a new, live, outbound telephone call to Plaintiff's 0794

number from telephone number (323) 300-2226 — a different number from the toll-free number Plaintiff had called and different from either caller-identification number used for the prerecorded voicemails. Plaintiff did not place this call and did not request it. This second call lasted approximately seventeen minutes and forty-seven seconds.

39. Approximately one minute and thirty-three seconds into the second call, "Aura" stated the amount Plaintiff would be required to pay each month: $1,098.93 — the same monthly figure recited in Cordoba's written retainer agreement.

40. Approximately three minutes and six seconds into the second call, "Aura" told Plaintiff: "First of all, this is a debt supplement option, where the company, Cordoba Legal, will be reaching out to your creditors to negotiate on the terms to eliminate your interest."

41. Approximately four minutes and fifty-seven seconds into the second call, "Aura" told Plaintiff: "You have to stop making payments to your creditor because Cordoba Legal will be helping you with the payments." The instruction to cease making payments to one's creditors is advice with direct legal consequences for the consumer, including exposure to default, acceleration, adverse credit reporting, collection proceedings, and suit, and it corresponds to the "Material Disclosures" that Cordoba's own retainer agreement recites as consequences of enrollment in its program.

42. Approximately five minutes and seventeen seconds into the second call, "Aura" asked Plaintiff for his checking account information, which Plaintiff provided.

43. Throughout the second call, "Aura" repeatedly referred to the Cordoba retainer agreement she was preparing to send Plaintiff as his "legal draft." Approximately ten minutes and thirty-nine seconds into the call, she told Plaintiff she was "submitting this information to my underwriting department for a quick review before sending you your legal draft." Approximately

twelve minutes and fifty-eight seconds in, she told him: "Brandon, I'm just about to send you your legal draft, sir." Approximately thirteen minutes and twenty-four seconds in, she told him: "Ok, Brandon. I'm about to send you your legal draft. It will be coming under Click Sign from Aura." Approximately seventeen minutes and one second in, she told him: "Brandon, I have just sent you your legal draft."

### E. The Mid-Call Transmission of Cordoba's Retainer

44. At approximately 10:37 a.m. on April 27, 2026 — while Plaintiff was still on the second telephone call with "Aura," and without Plaintiff having requested it or having asked that anything be sent to him — Defendants caused an electronic signature request to be transmitted to Plaintiff's email address through the platform "ClixSign." "Aura" stated during the call that she had sent the document, and Plaintiff received it while still on the telephone with her. The "from" line identified the sender as "Aura A via Clixsign," the message was sent from the email address docs@clearfinancetoday.com, and the email expressly directed Plaintiff to consult his "representative at Clear Finance Today" with any questions.

45. The document Plaintiff was asked to sign was a multi-part legal-services package consisting of: (i) a Retainer Agreement dated April 27, 2026, between Plaintiff and Cordoba Legal Group, LLC.; (ii) a Limited Power of Attorney designating Cordoba as Plaintiff's attorney-in-fact for purposes of negotiating consumer debts; (iii) an "Authorization to Communicate with Capital One" naming Cordoba as Plaintiff's authorized representative; (iv) a Notice of Cancellation; (v) a Privacy Policy of Cordoba; and (vi) an Account Agreement with Set Forth, LLC, identifying Cordoba as Plaintiff's "Debt Relief Service Provider." The package bore Cordoba's letterhead and marketing materials, listed Cordoba's Boca Raton address, and identified Alfredo Cordoba, Esq. and Ramona S. Ladwig as the Cordoba lawyers undertaking the representation. A true and correct

copy of the retainer package Defendants transmitted to Plaintiff, with Plaintiff's personal identifiers redacted pursuant to Federal Rule of Civil Procedure 5.2, is attached hereto as Exhibit 1 and incorporated by reference.

46. Exhibit A to the transmitted Retainer Agreement itemized seven of Plaintiff's creditors by name, account number, and outstanding balance, totaling $82,224.00. The account numbers and balances set forth in Exhibit A were derived from the consumer credit report pulled earlier that morning and from Plaintiff's answers to the representatives' questions.

47. Plaintiff did not sign the retainer agreement and did not enter into any contract for legal services with Cordoba.

## F. Cordoba's Knowing Financing of the Solicitations

48. The retainer package transmitted to Plaintiff was not assembled in response to any request by Plaintiff. It was pre-built, firm-branded, executed on the firm's side, populated with Plaintiff's personal and credit information, and transmitted to Plaintiff while he was still on the telephone with Defendants' representatives — within approximately fifty-one minutes of the moment he first dialed the callback number.

49. A fully assembled, firm-branded, firm-executed legal-services package containing a law firm's letterhead, marketing materials, privacy policy, limited power of attorney, creditor authorization, and the signatures of two of the firm's lawyers does not materialize in the hands of an unaffiliated telemarketer, populated with a consumer's credit-report data and addressed to a consumer who telephoned a number from a prerecorded message minutes earlier, absent an established, funded, and ongoing arrangement between the law firm and the telemarketer.

50. Cordoba supplied its telemarketers with Cordoba's retainer-agreement templates, its Limited Power of Attorney form, its creditor authorization forms, its privacy policy, its

marketing materials, and the executed firm-side signature block of Alfredo Cordoba, Esq., for transmission to consumers those telemarketers solicited by telephone. Cordoba supplied those materials knowing that they would be used to consummate solicitations made by telephone to consumers with whom Cordoba had no pre-existing relationship.

51. Cordoba further authorized its telemarketers to market Cordoba by name and by reputation. The representative's scripted recitation of Cordoba's Better Business Bureau rating and Trustpilot ratings, and her scripted description of the legal services Cordoba would perform, originated with Cordoba or were approved by it.

52. Cordoba paid and financed the telemarketers and the credit-pull vendor who carried out the solicitation described above, whether on a per-lead, per-retainer, or other compensation basis, and knew or believed that the funds it paid were intended to further the commission of telephonic solicitation of legal employment. The funds Cordoba paid were necessary to, and were used for, the placement of those solicitations.

53. Cordoba's knowledge of the manner in which its leads are generated is further established by, among other things: its receipt and review of the executed retainer agreements produced by the campaigns; its designation of a Texas-licensed "Local Counsel," Ramona S. Ladwig, to service the Texas consumers the campaigns produce; its execution in advance of retainer agreements to be presented to consumers it had never met or spoken with; the fact that its telemarketers market Cordoba by name and recite Cordoba's consumer ratings from a script; the routing of consumers through multiple front operations and internet domains; and the volume and regularity of the leads the campaigns deliver.

54. Cordoba accepts and retains the benefit of the solicitations in the form of executed retainer agreements and the resulting multi-year fee streams.

**G. Injury to Plaintiff**

55. Defendants' unlawful solicitations caused Plaintiff concrete and particularized harm.

56. Defendants' two prerecorded voicemails, and Defendants' live return call to Plaintiff, intruded upon Plaintiff's seclusion and privacy in his home. Plaintiff was at his residence, engaged in his work preparing tax returns during tax season, when the unsolicited calls arrived and interrupted him. Plaintiff had taken affirmative steps to secure that seclusion, including by registering the Subject Number on the National Do-Not-Call Registry nearly two years earlier. The intrusion Plaintiff suffered is the same kind of harm that has traditionally been actionable at common law as intrusion upon seclusion.

57. Plaintiff was annoyed, aggravated, and disturbed by Defendants' unsolicited solicitations and by the concealment of the solicitor's true identity and purpose.

58. Plaintiff lost the use of, and was deprived of the exclusive enjoyment of, his cellular telephones and their resources during the solicitations, including the depletion of battery and the occupation of storage by the recorded messages.

59. Plaintiff, who prepares income tax returns for others for compensation, was solicited during tax season and expended approximately four hours of his time dealing with Defendants' solicitations — time that had professional value and that was diverted from his work. That time included approximately forty-five minutes on the telephone calls, approximately thirty minutes reviewing the unrequested retainer package, approximately two hours researching the entities that had solicited him in an effort to identify them, and approximately forty-five minutes gathering and preserving evidence and corresponding in writing.

60. Plaintiff supplied Defendants, at their request and in reliance on their representations, with his name, date of birth, home address, email address, Social Security number,

and checking account information. Plaintiff thereby lost control over sensitive personal identifying and financial information to a telemarketing operation whose true identity Defendants concealed from him.

61. Defendants used Plaintiff's Social Security number and other identifying information to obtain, through DRM Solutions, LLC, a "soft" pull of Plaintiff's consumer credit report — an inquiry into Plaintiff's private financial affairs that Plaintiff did not seek and that Defendants obtained by concealing that a law firm was soliciting his legal business. Defendants then used the contents of that credit report to populate Exhibit A to the retainer agreement they transmitted to him.

62. These harms are concrete. They are not merely the assertion of a statutory violation. Each is a real-world injury that Plaintiff actually experienced, and each bears a close relationship to harms traditionally recognized as providing a basis for suit in American courts — including intrusion upon seclusion, invasion of privacy, and nuisance.

## CLASS ACTION ALLEGATIONS

63. Plaintiff brings this action as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of himself and the following Class:

> All natural persons (a) who, while physically present in Texas, (b) within the four (4) years preceding the filing of the original Complaint and through the date of class certification, (c) received one or more telephone calls or voicemails (whether live, prerecorded, or made through an automated system) (d) that solicited the recipient to engage Cordoba Legal Group for legal services; (e) where the call or voicemail was placed by, on behalf of, or financed by Cordoba Legal Group; (f) where, prior to receiving the call, the recipient had no family, attorney-client, or pre-existing professional relationship with the calling party or with Cordoba Legal Group; (g) who was thereafter sent a Cordoba Legal Group retainer agreement; and (h) who did not sign that retainer agreement or otherwise enter into a written contract for legal services with Cordoba Legal Group (the "Class").

64. Excluded from the Class are: (a) Defendants, their officers, directors, agents, employees, parents, subsidiaries, affiliates, attorneys, and successors; (b) all judges assigned to this action and any members of their immediate families and staffs; and (c) all persons who properly opt out of the Class.

65. The Class as defined includes only persons who did not enter into a contract for legal services with Cordoba, and therefore includes only persons whose claims arise under Tex. Gov't Code § 82.0651(c). Persons who signed a Cordoba retainer agreement are excluded from the Class.

66. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery, including the right to define one or more subclasses if appropriate.

## A. Numerosity (Fed. R. Civ. P. 23(a)(1))

67. The Class is so numerous that joinder of all members is impracticable. On information and belief, Defendants have placed telephonic solicitations of the kind described herein to thousands of Texas residents in furtherance of their legal-marketing funnel, and have transmitted retainer agreements to a substantial number of them. That Defendants transmitted the identical twenty-eight-second recorded message to Plaintiff alone on two separate occasions, from two different caller-identification numbers, five weeks apart, and route consumers through multiple front operations and internet domains, evidences a high-volume automated campaign rather than isolated contacts. The exact size of the Class can be determined from Defendants' records, including dialer logs, call-detail records, customer-relationship-management records, electronic-signature platform records, credit-inquiry records, and lead-purchase records.

**B. Commonality (Fed. R. Civ. P. 23(a)(2))**

68. There are questions of law and fact common to the Class, including without limitation:

(a) whether Defendants placed, financed, or invested funds in telephone calls and voicemails soliciting Texas residents to engage Cordoba for legal services;

(b) whether those calls and voicemails constituted "solicit[ation of] employment" within the meaning of Tex. Penal Code § 38.12(a)(2);

(c) whether the persons placing the solicitations did so with the intent to obtain an economic benefit;

(d) whether Defendant Cordoba knowingly financed the solicitations, or invested funds Cordoba knew or believed were intended to further the solicitations, in violation of Tex. Penal Code § 38.12(b);

(e) whether the conduct of Defendant Cordoba and its lawyers violated Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct;

(f) whether the telemarketers used a standardized script that identified Cordoba by name, recited Cordoba's consumer ratings, referred to the retainer as a "legal draft," and described the legal services Cordoba would perform;

(g) whether Cordoba, through the standardized intake process its telemarketers used — including the collection of Social Security numbers and the soft pull of consumer credit reports — knew or reasonably should have known that the persons solicited needed legal services in a particular matter;

(h) whether Cordoba supplied its telemarketers with firm-branded, firm-executed retainer materials for transmission to solicited consumers;

(i) whether Plaintiff and Class members are entitled to the $50,000 statutory penalty under Tex. Gov't Code § 82.0651(d);

(j) whether Plaintiff and Class members are entitled to actual damages and attorney's fees; and

(k) whether Defendants should be enjoined from continuing the conduct described herein.

**C. Typicality (Fed. R. Civ. P. 23(a)(3))**

69. Plaintiff's claim is typical of the claims of the Class. Plaintiff and each Class member received an unsolicited telephonic solicitation to engage Cordoba for legal services, had no pre-existing relationship with Defendants, was sent a Cordoba retainer agreement, and did not sign it. Plaintiff's claim and the claims of the Class arise from the same course of conduct — Cordoba's financed legal-marketing funnel, executed through a standardized script and a standardized intake sequence — and are based on the same legal theory: civil liability for prohibited barratry under Tex. Gov't Code § 82.0651(c).

**D. Adequacy (Fed. R. Civ. P. 23(a)(4))**

70. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to those of the Class. Plaintiff has retained competent counsel experienced in the prosecution of consumer class actions and barratry actions, who will vigorously prosecute this case on behalf of the Class.

**E. Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))**

71. Common questions of law and fact predominate over any questions affecting only individual Class members. The central questions in this case — whether Defendants operated a

programmatic, scripted campaign of telephonic solicitation of legal employment, whether Cordoba knowingly financed that campaign, whether Cordoba supplied the firm-executed retainer materials the campaign delivered, and whether that conduct violated Tex. Penal Code § 38.12 and Rule 7.03 — are common to all Class members and will be resolved through evidence common to the Class, principally Defendants' own dialer, call, script, lead, contract, electronic-signature, credit-inquiry, and payment records.

72. The uniformity of Defendants' conduct is itself established by common proof. Defendants transmitted a single twenty-eight-second recorded message, verbatim, to consumers. Their representatives followed a standardized intake sequence — personal identifiers first, credit pull second, debt interrogation third, Cordoba disclosure fourth, "legal draft" transmission last. Whether that uniform course of conduct constitutes barratry is a question that can be answered once, for the entire Class.

73. The Class is defined by reference to objective criteria capable of common proof from Defendants' records: whether a solicitation call was placed, whether a Cordoba retainer agreement was thereafter transmitted, and whether that retainer agreement was signed. Because the Class excludes persons who contracted with Cordoba, no individualized inquiry into contract formation, fees paid, or contract-based injury is required.

74. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Although the statutory penalty available to each Class member is significant, individual Class members are unlikely to pursue separate barratry litigation against Cordoba: Defendants deliberately concealed Cordoba's identity behind trade names such as "Green Finance" and "Clear Finance Today," behind separate internet domains, and behind spoofed or rotating caller-identification numbers, and withheld Cordoba's name until more than

thirty minutes into a live call, so many Class members would not know which law firm to sue; many would lack the resources to litigate complex barratry claims against a national law firm with experienced defense counsel; and the discovery tools necessary to identify the universe of Class members and the responsible defendants are not realistically available outside the class-action context. Class treatment will conserve judicial resources, ensure consistent adjudication of common issues, and provide redress to Class members who otherwise would have no practical means of obtaining it.

### F. Injunctive Relief Class (Fed. R. Civ. P. 23(b)(2))

75. Defendants have acted on grounds generally applicable to the Class, making final injunctive and corresponding declaratory relief appropriate as to the Class as a whole. The Class seeks an injunction prohibiting Defendants and their agents from continuing to solicit Texas residents by telephone for legal employment with Cordoba in violation of Tex. Penal Code § 38.12 and Rule 7.03.

## COUNT I

## Civil Liability for Prohibited Barratry

## Tex. Gov't Code § 82.0651(c), (d); Tex. Penal Code § 38.12(a) and (b); Tex. Disciplinary R. Prof'l Conduct 7.03

## (Against All Defendants, On Behalf of Plaintiff and the Class)

76. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

77. Tex. Gov't Code § 82.0651(c) provides that "[a] person who was solicited by conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons,

but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry."

78. Section 82.0651(c) provides three independent statutory and disciplinary hooks for civil liability — § 38.12(a), § 38.12(b), and Rule 7.03 — each of which is independently sufficient to sustain Plaintiff's and the Class's claims. The cause of action lies against any "person who committed barratry," which includes each direct solicitor under § 38.12(a) and each direct financier under § 38.12(b), whether or not those persons share an agency relationship with one another.

### A. Direct Liability of the Solicitors Under Tex. Penal Code § 38.12(a)(2)

79. Tex. Penal Code § 38.12(a)(2) makes it an offense if, with intent to obtain an economic benefit, the person "solicits employment, either in person or by telephone, for himself or for another." The offense defined by § 38.12(a)(2) does not require that the solicitor know the solicited person needs legal services in any particular matter.

80. The Doe Defendants violated § 38.12(a)(2) directly by placing, or causing to be placed, the two prerecorded voicemails and the live telephone communications described above to Plaintiff and Class members. Those communications solicited employment of Cordoba for legal services: the representatives expressly identified Cordoba by name, marketed Cordoba's consumer ratings, told Plaintiff that Cordoba would be reaching out to his creditors to negotiate on his behalf, instructed Plaintiff to stop paying his creditors because Cordoba would be handling his payments, repeatedly referred to the retainer as Plaintiff's "legal draft," requested his checking account information, and transmitted a Cordoba retainer agreement for his signature. The solicitations were made with intent to obtain an economic benefit — namely, the compensation Cordoba paid the Doe Defendants for the consumer leads and retainers they generated, and the attorney's fees

Cordoba was to obtain from the executed retainer agreements. The Doe Defendants had no family, attorney-client, or pre-existing professional relationship with Plaintiff or Class members.

## B. Direct Liability of Cordoba as Financier Under Tex. Penal Code § 38.12(b)

81. Tex. Penal Code § 38.12(b) provides that a person commits an offense if the person "knowingly finances the commission of an offense under Subsection (a)" or "invests funds the person knows or believes are intended to further the commission of an offense under Subsection (a)." A person who knowingly finances barratry is a primary violator under the Penal Code and is therefore directly liable under Tex. Gov't Code § 82.0651(c). Such liability does not depend on agency, vicarious liability, ratification, or any other secondary-liability theory. The offense defined by § 38.12(b) does not require that the financier know the solicited person needs legal services in any particular matter.

82. Defendant Cordoba violated Tex. Penal Code § 38.12(b) by knowingly financing the conduct of the Doe Defendants — namely, the placement of unlawful telephonic solicitations to Texas residents — and by investing funds Cordoba knew or believed were intended to further the commission of those solicitations, as alleged in paragraphs 48 through 54 above.

## C. Direct Liability of Cordoba Under Tex. Disciplinary R. Prof'l Conduct 7.03

83. Tex. Gov't Code § 82.0651(c) provides an additional and independent basis for civil liability against any person who commits barratry within the meaning of Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct. Rule 7.03 prohibits a lawyer from engaging in regulated telephone, social media, or other electronic contact involving live or electronically interactive communication — whether initiated by the lawyer or by another person acting on the lawyer's behalf — to seek professional employment from a prospective client when a significant

motive for doing so is the lawyer's pecuniary gain, unless the prospective client has a qualifying family, current or former attorney-client, or close personal relationship with the lawyer.

84. Defendant Cordoba, by and through Defendant Alfredo Cordoba and through persons acting on their behalf, violated Rule 7.03 in at least three respects:

(a) Defendants' representative placed a live, real-time outbound telephone call to Plaintiff at approximately 10:23 a.m. on April 27, 2026, from telephone number (323) 300-2226. Plaintiff did not place that call and did not request it. During that call, the representative solicited Plaintiff's professional employment of Cordoba by name, described the legal services Cordoba would render, referred to the retainer as Plaintiff's "legal draft," advised Plaintiff to stop paying his creditors, and requested Plaintiff's checking account information.

(b) During the live, real-time telephone communications on April 27, 2026, persons acting on Cordoba's behalf identified Cordoba by name, marketed Cordoba's Better Business Bureau and Trustpilot ratings, represented that Cordoba would contact and negotiate with Plaintiff's creditors, collected Plaintiff's personal identifying information, obtained his consumer credit report, and questioned Plaintiff about his specific debts, creditors, income, and bills.

(c) While Plaintiff remained on the telephone, persons acting on Cordoba's behalf transmitted to Plaintiff an electronically interactive signature request designed to procure Plaintiff's execution of a Cordoba retainer agreement.

85. A significant motive for that conduct was Cordoba's pecuniary gain — the $20,556.00 in attorney's fees recited in the retainer agreement Defendants asked Plaintiff to sign. Plaintiff had no qualifying family, current or former attorney-client, or close personal relationship

with Cordoba's lawyers. Plaintiff had not sought Cordoba's advice or services. The same conduct was directed at the Class members.

86. Through the intake process described above — the collection of Plaintiff's Social Security number, the soft pull of his consumer credit report through DRM Solutions, LLC, and the detailed questioning about his specific debts, creditors, income, and bills — Cordoba knew and reasonably should have known that Plaintiff needed legal services in a particular matter, namely, the resolution and defense of the specific consumer debts that process identified. Exhibit A to the retainer agreement Defendants transmitted to Plaintiff itemized those debts by creditor, account number, and balance, totaling $82,224.00. The same is true of each Class member, whose debts Defendants identified through the same standardized intake process before transmitting a Cordoba retainer agreement.

### D. Plaintiff and Class Members Were Solicited and Did Not Contract

87. Plaintiff and each Class member is a "person who was solicited by conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03" within the meaning of Tex. Gov't Code § 82.0651(c) and who did not enter into a contract for legal services with Cordoba as a result of that conduct.

### E. Remedies

88. Pursuant to Tex. Gov't Code § 82.0651(d), as amended by H.B. 4325 (89th Leg., R.S.), Plaintiff and each Class member shall recover from each person who engaged in barratry: (1) a penalty in the amount of $50,000; (2) actual damages caused by the prohibited conduct; and (3) reasonable and necessary attorney's fees.

89. Plaintiff and the Class are further entitled to permanent injunctive relief enjoining Defendants from continuing the unlawful conduct described herein.

**COUNT II**

**Unlawful Unregistered Telephone Solicitation**

**Tex. Bus. & Com. Code §§ 302.101, 302.302, 302.303; §§ 17.46, 17.50**

**(Against All Defendants, On Behalf of Plaintiff and the Class)**

90. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

91. Chapter 302 of the Texas Business & Commerce Code regulates telephone solicitation. Tex. Bus. & Com. Code § 302.101(a) provides that "[a] seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made."

92. Defendants are "sellers" within the meaning of Tex. Bus. & Com. Code § 302.001 because they, on their own behalf or through salespersons, caused consumer telephone calls to be made to solicit consumer transactions — the retention of Cordoba for debt-relief legal services in exchange for payment. Defendants made, or caused to be made, telephone solicitations to Plaintiff and Class members, who were purchasers located in Texas.

93. Neither Cordoba, nor Alfredo Cordoba, nor any telemarketing operation acting on their behalf — including the operations identifying themselves as "Clear Finance Today," "Green Finance," and those using the internet domains "clearfinancetoday.com," "theenrollment.com," and "partner1corp.com" — held a registration certificate issued by the Office of the Secretary of State of Texas authorizing telephone solicitation of Texas consumers, as required by Tex. Bus. & Com. Code § 302.101, at the time of the solicitations described in this Complaint.

94. Any exemption from Chapter 302 applies "only to a seller." Tex. Bus. & Com. Code § 302.052. No Defendant is an exempt seller, and Plaintiff is aware of no exemption applicable to any Defendant. Each telephone solicitation Defendants made or caused to be made

to Plaintiff and Class members without the required registration certificate was a separate violation of Chapter 302.

**A. Civil Penalty Under Tex. Bus. & Com. Code § 302.302**

95. Tex. Bus. & Com. Code § 302.302(a) provides that "[a] person who violates this chapter is subject to a civil penalty of not more than $5,000 for each violation." That civil penalty is recoverable in a private action; it is not confined to enforcement by the attorney general. Plaintiff and each Class member may therefore recover from each Defendant a civil penalty of up to $5,000 for each unlawful, unregistered telephone solicitation made or caused to be made to them, without regard to the "consumer" or reliance requirements applicable to a claim under Subchapter E, Chapter 17.

96. Because Defendants made or caused to be made multiple unregistered telephone solicitations to Plaintiff — including, without limitation, the prerecorded voicemails of March 16, 2026 and April 21, 2026, and the live telephone calls of April 27, 2026 — and made or caused to be made unregistered telephone solicitations to each Class member, Plaintiff and the Class are entitled to the civil penalty prescribed by § 302.302(a) for each such violation.

**B. Deceptive Trade Practice Under Tex. Bus. & Com. Code § 302.303 (In the Alternative)**

97. In addition and in the alternative, Tex. Bus. & Com. Code § 302.303(a) provides that "[a] violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" — that is, under the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"). Tex. Bus. & Com. Code § 302.303(b) provides that "[a] public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce this chapter."

Defendants' unregistered telephone solicitation of Plaintiff and Class members was therefore also a false, misleading, or deceptive act or practice actionable under the DTPA.

98. Plaintiff is a "consumer" within the meaning of Tex. Bus. & Com. Code § 17.45(4). Plaintiff sought Cordoba's debt-relief legal services: he returned Defendants' telephone call, provided his personal and financial information, submitted to Defendants' intake process and credit pull, and received Cordoba's retainer agreement. Plaintiff's purposes in seeking those services included ascertaining the identity of the person or entity responsible for the unlawful prerecorded telephone solicitations he had received.

99. Plaintiff and the Class were adversely affected by Defendants' unregistered telephone solicitation. Plaintiff, who provides bookkeeping, accounting, and tax-preparation services at an average rate of $100 per hour, was solicited during tax season and expended approximately four hours of his time — time with professional value diverted from his work — in responding to and dealing with the solicitations, including efforts to ascertain the concealed identity of those responsible. Plaintiff also suffered annoyance, invasion of privacy, and wasted time as a result of the recurring unlawful solicitations. Plaintiff's economic damages are not less than $400. Plaintiff seeks economic damages in an amount to be proven at trial, together with additional damages under Tex. Bus. & Com. Code § 17.50(b)(1) for Defendants' knowing and intentional conduct, and reasonable and necessary attorney's fees and costs under § 17.50(d).

100. With respect to the alternative DTPA theory only, Plaintiff provided Defendants with written notice of this consumer complaint as required by Tex. Bus. & Com. Code § 17.505(a). On August 3, 2026, Plaintiff's counsel transmitted the following notice to Defendants' counsel by email:

> This firm represents Brandon Callier, individually and on behalf of all others similarly situated. We understand that you represent Cordoba Legal

> Group PLLC in the above-referenced matter. This letter is directed to you as counsel for Cordoba Legal Group PLLC, and also constitutes notice to Alfredo Cordoba individually, provided through you as counsel. It is a written notice of a consumer complaint, given at least sixty (60) days before the assertion of a claim, as required by Section 17.505(a) of the Texas Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 et seq.
>
> On March 16, 2026 and again on April 21, 2026, Cordoba Legal Group PLLC, by itself and through telemarketers it pays and finances, caused unsolicited prerecorded telephone voicemails to be transmitted to Mr. Callier's cellular telephone in El Paso, Texas, concealing that a law firm was soliciting his legal business. When Mr. Callier returned the call on April 27, 2026, Cordoba's representatives obtained his personal identifying information and a soft pull of his consumer credit report, questioned him about his debts, disclosed for the first time that the service was provided by "Cordoba Legal," and — while he was still on the telephone — transmitted a Cordoba retainer agreement for his signature. These telephone solicitations were made to a purchaser located in Texas without the registration certificate required of a seller under Tex. Bus. & Com. Code § 302.101. Under Tex. Bus. & Com. Code § 302.303, that violation is a false, misleading, or deceptive act or practice actionable under the DTPA. Mr. Callier is a consumer who sought Cordoba's debt-relief legal services and was adversely affected by the unregistered and deceptive solicitation.
>
> Mr. Callier provides bookkeeping, accounting, and tax-preparation services at an average rate of $100 per hour and expended approximately four hours in responding to and dealing with the solicitations. Mr. Callier's individual economic damages are not less than $400.00, and he has reasonably incurred attorney's fees of $7,125.00 (25.0 hours at $285.00 per hour) and costs of $405.00 that continue to accrue. Because Mr. Callier brings this complaint individually and on behalf of a class of similarly situated Texas residents, classwide damages cannot yet be estimated and will be established through discovery of Defendants' records. Demand is made for payment of $7,930.00, without prejudice to classwide relief. Any resolution, tender, or settlement of Mr. Callier's individual claim will not moot, satisfy, settle, or release the claims of the putative class. If this matter is not resolved within sixty (60) days, Mr. Callier intends to assert his DTPA claim, together with his other claims, in litigation.

101. The civil-penalty claim under § 302.302(a) does not require the notice described in § 17.505. To the extent the sixty-day period following the notice above has not elapsed as of the filing of this Complaint as to the alternative DTPA theory, Plaintiff pleads that theory subject to,

and will amend or abate as necessary to satisfy, the notice and abatement provisions of § 17.505, which do not bar the filing of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court enter judgment in his and the Class's favor and against Defendants, awarding the following relief:

A. An order certifying the proposed Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3); appointing Plaintiff as Class Representative; and appointing Plaintiff's counsel as Class Counsel;

B. A statutory penalty of $50,000 for Plaintiff and for each Class member, recoverable from each person who engaged in barratry, pursuant to Tex. Gov't Code § 82.0651(d) (as amended by H.B. 4325, 89th Leg., R.S.);

C. Actual damages for Plaintiff and each Class member, recoverable from each person who engaged in barratry, pursuant to Tex. Gov't Code § 82.0651(d);

D. Reasonable and necessary attorney's fees and costs of suit, pursuant to Tex. Gov't Code § 82.0651(d);

E. On Count II, a civil penalty of up to $5,000 for each unlawful, unregistered telephone solicitation made or caused to be made to Plaintiff and to each Class member, pursuant to Tex. Bus. & Com. Code § 302.302(a);

F. On Count II, in the alternative, economic damages for Plaintiff and each Class member, additional damages for Defendants' knowing and intentional conduct under Tex. Bus. & Com. Code § 17.50(b)(1), and reasonable and necessary attorney's fees and court costs under § 17.50(d), pursuant to Tex. Bus. & Com. Code §§ 302.303 and 17.50;

G. A permanent injunction prohibiting Defendants and their agents, employees, officers, members, representatives, successors, partners, assigns, and any persons acting in concert or participation with them from (i) soliciting legal employment by telephone in violation of Tex. Penal Code § 38.12 and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, and from financing such conduct, and (ii) making telephone solicitations to Texas residents without the registration certificate required by Tex. Bus. & Com. Code § 302.101;

H. Pre- and post-judgment interest as allowed by law; and

I. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff, individually and on behalf of the proposed Class, hereby demands a trial by jury on all claims and issues so triable.

Dated: August 4, 2026

Respectfully submitted,

/s/ Mark L. Javitch
Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave., Suite 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Email: mark@javitchlawoffice.com

Attorney for Plaintiff
BRANDON CALLIER and the proposed Class

**CERTIFICATE OF SERVICE**

On August 4, 2026, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by the Federal Rules of Civil Procedure.

/s/ Mark L. Javitch
Mark L. Javitch